IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                                          PLAINTIFF

VS.                          Civil No. 2:23-CV-02100-SOH-MEF

GERALD SUTTON                                                    DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is an action to enforce an order of monetary forfeiture issued by the Federal Communications Commission ("FCC") against the Defendant, Gerald Sutton ("Sutton"), for operating a radio station without authority, in violation of 47 U.S.C. § 301.  (ECF No. 3).  Plaintiff, United States of America (the "Government"), has filed motions to dismiss Sutton's counterclaim, to award the Government judgment on the pleadings, and to strike a memorandum that Sutton filed in support of his opposition to the Government's dispositive motions.  (ECF Nos. 11–12, 19).  Proceeding *pro se*, Sutton has responded to the Government's dispositive motions and its motion to strike.  (ECF Nos. 13, 17).  The Honorable Susan O. Hickey, Chief United States District Judge, has referred the case to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(VIII).  (ECF No. 18).  For the reasons and upon the authorities discussed below, it is RECOMMENDED that the Government's dispositive motions be granted.  The Government's motion to strike Sutton's memorandum has been denied by separate Order.  (ECF No. 21).

## I.       BACKGROUND

In October 2018, an agent of the FCC's Enforcement Bureau investigated and confirmed a complaint of unauthorized radio transmissions at 725 Fayetteville Avenue in Alma, Arkansas.

(ECF No. 3 at 4-5).  Using radio direction-finding methods, the agent determined that, on October 18, 2018, Sutton was operating a radio station that was transmitting a radio signal on FM frequency 103.1 MHz, and the signal strength of the station exceeded that permitted by FCC rules for unlicensed radio broadcasting.  (*Id*.).  The station's radio transmitter was turned off minutes after the agent's arrival at the site, and it was turned on again after his departure.  The agent confirmed the unlicensed status of the station from FCC records, and on November 13, 2018, the FCC mailed a Notice of Unlicensed Operation to Sutton, informing him that the station was operating in violation of the licensing requirements of 47 U.S.C. § 301 and related FCC rules and policy.  (*Id*. at 4-6; ECF No. 3-1; ECF No. 3-3 at 1-2).  The notice warned Sutton that the potential penalties for violating § 301 included substantial monetary fines, seizure of the offending radio equipment, and criminal sanctions.  (ECF 3-1 at 1).  It further directed him to cease unlicensed operation of the radio station immediately and to respond to the notice within 10 days, providing any evidence of his authority to operate granted by the FCC so that an appropriate enforcement action, if any, could be determined.  (*Id*. at 1-2).

Sutton did not respond within 10 days, but on December 31, 2018, the FCC received Sutton's five-page response to the notice.  He acknowledged the FCC's request that he provide evidence of authority from the FCC to broadcast, but he neither claimed such authority nor provided evidence of it.  (ECF No. 3 at 6; ECF No. 3-2 at 1-5).  Instead, Sutton asserted that, as a "free, natural-born man," the laws referenced in the FCC's notice do not apply to him, and he was "disinclined to acquiesce to [the FCC's] demands."  (ECF No. 3-2 at 1-2).

Pursuant to 47 U.S.C. § 503(b)(4), on August 22, 2019, the FCC released a Notice of Apparent Liability ("NAL") for the violation and sent it to Sutton by several methods: Certified Mail, with a return receipt requested; United Parcel Service ("UPS"); and First-Class Mail.  (ECF

No. 3-1 at 2-3; ECF No. 3-3 at 1, 5).  Setting forth the facts of the FCC's investigation, the applicable law prohibiting "pirate" radio stations, and Sutton's response stating that the cited law did not apply to him, the NAL gave Sutton notice that he had apparently committed a violation of § 301 on October 18, 2018, and proposed a forfeiture penalty of $10,000.  (ECF No. 3 at 6; ECF No. 3-3 at 1-2).  The NAL directed Sutton, within 30 days of the date of the NAL, to pay the full amount of the penalty or file a written request for reduction or cancellation of it, and, if seeking reduction or cancellation, to include specific statements, affidavits, and evidence to support the request.  (ECF No. 3-3 at 3-4).  The copy of the NAL sent by Certified Mail was returned to the FCC; the copy sent by UPS was refused at delivery; but the copy sent by First-Class Mail was not returned.  (ECF No. 3 at 6).

Sutton did not pay the penalty, nor did he seek its reduction or cancellation, and on June 18, 2020, the FCC issued a Forfeiture Order affirming the NAL.  (ECF No. 3-4 at 1-3).  The FCC determined that Sutton had violated § 301 by willfully operating an unlicensed radio station, and it imposed a penalty of $10,000.  (ECF No. 3-4 at 1).  The Forfeiture Order demanded payment of the penalty within 30 days, and it advised Sutton that if he did not make payment the matter could be referred to the Department of Justice for enforcement.  (*Id*.).  The FCC sent a copy of the order to Sutton by First-Class Mail and Certified Mail, with a return receipt requested.  (ECF No. 3 at 7; ECF 3-4 at 1, 3).  Both copies were returned to the FCC.  (ECF No. 3 at 7).  Sutton did not pay the penalty, and the Government initiated this enforcement action pursuant to 47 U.S.C. § 504, which provides for a trial *de novo* in district court for cases involving unpaid FCC forfeiture orders.  47 U.S.C. § 504(a).

In its Complaint filed on July 27, 2023, the Government asserts that Sutton is liable to it in the amount of $10,000 pursuant to 47 U.S.C. § 503(b)(1), 47 C.F.R. § 1.80, and 12 FCC Rec.

17087 (1997).  (ECF No. 3 at 7-8).  The Government further asserts that its demand for payment of this claim remains unpaid; therefore, it seeks to reduce the $10,000 certificate of forfeiture to judgment and recover costs and interest until the debt is paid in full.  (*Id*.).  Proceeding *pro se*, Sutton filed an Answer on November 7, 2023, in which he asserts several affirmative defenses and a counterclaim against the FCC and the Department of Justice.  (ECF No. 6).

The Government filed a Motion to Dismiss Defendant's Counterclaims and Motion for Judgment on the Pleadings on January 2, 2024.  (ECF Nos. 11-12).  It seeks dismissal of Sutton's counterclaim under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and under Rule 12(b)(6) for failure to state a claim.  (ECF No. 12 at 10-14).  It further seeks judgment on the pleadings pursuant to Rule 12(c).  Sutton filed a Response to Plaintiff's Motion to Dismiss Defendant's Counterclaims and Motion for Judgment on the Pleadings on January 22, 2024. (ECF No. 13).  The Government filed a Reply in Support of Motion to Dismiss Defendant's Counterclaims and Motion for Judgment on the Pleadings on February 5, 2024.  (ECF No. 16). Sutton filed a *pro se* Memorandum in Support of Defendant's Motions and Response on February 22, 2024.  (ECF No. 17).  The Government then filed a Motion to Strike Defendant's Untimely Memorandum in Response to Plaintiff's Motion to Dismiss Defendant's Counterclaims and Motion for Judgment on the Pleadings on February 22, 2024.  (ECF No. 19).  Sutton filed a Response to Plaintiff's Motion to Strike Defendant's Memorandum of Fact and Law on March 6, 2024.  (ECF No. 20).

Following a thorough review of the pleadings and the foregoing motions, responses, reply, and memoranda, and for the reasons stated below, it is RECOMMENDED: (1) that the Government's motion to dismiss Sutton's counterclaim be GRANTED; and (2), that the

Government's motion for judgment on the pleadings be GRANTED.  As noted, the Government's motion to strike Sutton's memorandum has been denied by separate Order.  (ECF No. 21).

## II.     LEGAL STANDARD

A pleading that presents a claim must contain "a short and plain statement" of the grounds for jurisdiction, "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought[.]"  Fed. R. Civ. P. 8(a).  All pleadings "must be construed so as to do justice."  Fed. R. Civ. P. 8(e).  In addition, the pleading of a party who is proceeding *pro se* must be liberally construed.  *See Whitson v. Stone County Jail,* 602 F.3d 920, 922 (8th Cir. 2010).  *Pro se* litigants, however, must comply with relevant rules of procedure. *Faretta v. California*, 422 U.S. 806, 834-35 n. 46 (1975).  Consequently, although it will be liberally construed, a *pro se* complaint "must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).  *See also Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (stating "[t]hough *pro se* complaints are to be liberally construed, … they still must allege sufficient facts to support the claims advanced"); *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981) ("*pro se* litigants must set [forth a claim] in a manner which, taking the pleaded facts as true, states a claim as a matter of law").

When a party challenges jurisdiction under Rule 12(b)(1) by making a "facial attack on the pleadings," the court will apply the same standard that is used to decide a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *Stalley v. Cath. Health Initiatives*, 509 F.3d 517, 520-21 (8th Cir. 2007) (citing *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003)).  Under that standard, the well-pleaded facts in the complaint will be accepted as true, but no effect will be given to conclusory allegations of law.  *Mattes*, 323 F.3d at 698 (citing *Parkhill v. Minnesota Mut. Life Ins. Co.*, 286 F.3d 1051, 1058).  To withstand dismissal, the complaint must state a claim to

relief that is plausible on its face. *Northstar Indus., Inc. v. Merrill Lynch & Co., Inc.*, 576 F.3d 827, 832 (8th Cir. 2009) (citing *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Under Rule 12(c), judgment on the pleadings is appropriate only where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law. *Faibisch v. University of Minnesota*, 304 F.3d 797, 802 (8th Cir. 2002) (citing *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000) (en banc) ("*Fried*")). An issue of fact is deemed to be material if the outcome of the case might be altered by its resolution one way rather than another. *Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters & Butcher Workmen of N. Am., AFL-CIO*, 627 F.2d 853, 855 (8th Cir. 1980). The protections afforded to the non-moving party under Rule 12(b)(6) also apply in the context of a Rule 12(c) motion. *Mickelson v. Ramsey County*, 823 F.3d 918, 923 (8th Cir. 2016). The non-moving party's well-pleaded facts will be accepted as true, and all reasonable inferences from the pleadings will be drawn in his favor. *Fried*, 207 F.3d at 462; *Schnuck Markets, Inc. v. First Data Merchant Services Corp.*, 852 F.3d 732, 737 (8th Cir. 2017); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1368, at 245 (3d ed. 2004) (hereinafter Wright & Miller). Although a moving party concedes the accuracy of well-pleaded factual allegations in the non-moving party's pleadings, he does not admit other assertions, such as conclusions of law or "facts which might appear by a record or document

included in the pleadings to be unfounded." *Hargis Canneries v. United States*, 60 F. Supp. 729, 729 (W.D. Ark. 1945). *See also Buckley v. Hennepin County*, 9 F.4th 757, 760 at 760 (8th Cir. 2021) (stating non-movant's well-pleaded facts are assumed to be true, "but we do not accept legal conclusions phrased as fact allegations"). When deciding the motion, the Court may rely on materials necessarily embraced by the pleadings, including exhibits attached to the complaint. *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459-60 (8th Cir. 2010) ("documents attached to or incorporated within a complaint are considered part of the pleadings, and courts may look at such documents 'for all purposes,' Fed. R. Civ. P. 10(c), including to determine whether a plaintiff has stated a plausible claim").

## III.    DISCUSSION

### A.    MOTION TO DISMISS SUTTON'S COUNTERCLAIM

The Government seeks dismissal of Sutton's counterclaim under both Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6). Under Rule 12(b)(1), it argues this Court lacks subject-matter jurisdiction because Sutton's pleading, liberally construed, demonstrates neither a waiver of sovereign immunity nor a source of subject matter jurisdiction for his counterclaim. (ECF No. 12 at 10-12). The Government also asserts that even if jurisdiction does lie for Sutton's counterclaim, it nevertheless should be dismissed under Rule 12(b)(6) because its allegations are threadbare and do not state a plausible claim for relief. (*Id*. at 13-14).

In response to the motion, Sutton does not contest the Government's arguments under Rule 12(b)(1) or Rule 12(b)(6), nor does he independently address the Court's jurisdiction. (ECF Nos. 13, 17). Rather, he states that he "grants permission to the Court to dismiss his counterclaims with or without prejudice as the Court sees fit." (ECF No. 13 at 3). In reply, the Government suggests that Sutton's statement that he "grants permission" for dismissal of his counterclaim "as the Court

sees fit" is akin to an affirmative notice of voluntary dismissal of the counterclaim pursuant to Federal Rule of Civil Procedure 41(a) and (c), and the Government joins Sutton in this request. (ECF 16 at 2).  The Court addresses this issue first.

Under Rule 41(c), a claimant may use the "notice" or "stipulation" described in Rule 41(a) to voluntarily dismiss his counterclaim after the pleadings are closed and before evidence is taken. Fed. R. Civ. P. 41(c).  The use of such a device "is self-executing and requires no action or approval from the court." *Talley v. City of Hope*, No. 4:19-CV-4137, 2020 WL 714172, at 1 (W.D. Ark. Feb. 12, 2020) (citing *Safeguard Bus. Sys., Inc. v. Hoeffel*, 907 F.2d 861, 863-64 (8th Cir. 1990)). Further, the pendency of a Rule 12 motion does not extinguish a litigant's right to a voluntary dismissal under Rule 41 unless the motion is properly considered as a motion for summary judgment.  *See Talley*, 2020 WL 714172, at 1-2 (construing *pro se* litigant's motion  to dismiss, filed in response to opposing party's Rule 12 motion, as a notice of voluntary dismissal where no answer or summary judgment motion had been filed); *Doshier v. Dallas County Det. Facility*, 2018 W 408821, at 1-2 (E.D. Ark. Aug. 27, 2018) (noting absolute right to voluntary dismissal is not curtailed by filing of Rule 12 motion).  *See also* 8 Moore's Federal Practice – Civil, § 41.13 (2024) (same); 9 C. Wright & A. Miller, Fed. Prac. & Proc., § 2363 (3d ed.) (same).

Under the foregoing authorities, Sutton would be authorized to voluntarily dismiss his counterclaim as a matter of right at this juncture if he were seeking to do so; however, the Court doubts that Sutton seeks do so.  *Talley* recognizes that under certain circumstances courts will liberally construe a *pro se* litigant's *motion* for voluntary dismissal as a self-executing notice under Rule 41 even though a motion requires court action.  *Talley*, 2020 WL 714172, at 1 (citing *Ventura-Vera v. Dewitt*, 417 F. App'x 591, 591-92 (8th Cir. 2011) (per curiam)).  In both *Talley* and *Ventura-Vega*, however, the *pro se* litigants gave "clear indication" that they intended to dismiss their

claims.  *See Ventura-Vera*, 417 F. App'x at 591-92; *Talley*, 2020 WL 714172, at 1.  In contrast, Sutton has not filed a motion affirmatively seeking an order of dismissal, and his statement, liberally construed, does not clearly indicate to the Court that he intends to dismiss his counterclaim.  He appears to leave that decision to the Court.  The Court need not decide whether Sutton intends a voluntary dismissal as of right under Rule 41 because the Court concludes that Sutton's counterclaim should be dismissed for lack of subject matter jurisdiction.  A dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1) yields the same result as would a dismissal of right under Rule 41: dismissal of the counterclaim without prejudice.[1]  Consequently, by dismissing without prejudice under Rule 12(b)(1), there can be no infringement of Sutton's right to a voluntary dismissal if that is what he intends.  The Court, thus, turns to the motion to dismiss.

The federal courts are courts of limited jurisdiction.  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  Their authority is restricted to matters that are entrusted to them by Congress.  *Bowles v. Russell*, 551 U.S. 205 (2007).  Therefore, a federal court cannot adjudicate a claim unless a statute provides it with subject matter jurisdiction to do so.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).  Additionally, the United States enjoys sovereign immunity from suit and, consequently, can be sued only to the extent it has consented to be sued, and only in the manner established by law.  *See Loeffler v. Frank*, 486 U.S. 549, 554 (1988); *Coleman v. Espy*, 986 F.2d 1184, 1189 (8th Cir. 1993); *Resolution Trust Corp. v. Plumlee*, 745 F. Supp. 1462, 1465 (E.D. Ark. 1990).  Thus, pursuant to Federal Rule of Civil Procedure 13(d), a counterclaim, like any other claim against the United States, can be maintained only when

---

[1] Although the Government requests that the dismissal on "consent" of the parties be with prejudice, the effect of a voluntary dismissal under Rule 41(c) is a dismissal without prejudice unless the parties agree otherwise.  Fed. R. Civ. P. 41(a)(1)(B).  The parties have not stipulated to a dismissal here, much less to a dismissal with prejudice, as required for a dismissal with prejudice under Rule 41(a).

the United States has consented to or waived its immunity from suit on that claim. *Resolution Trust Corp.*, 745 F. Supp. at 1465. When the United States *does* consent to a waiver of its immunity, whether explicitly by statute or by filing suit, the terms of its waiver define the extent of the court's jurisdiction. *United States v. Mottaz*, 476 U.S. 834, 841 (1986) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).

Here, the Government presents a "facial attack" on jurisdiction, asserting that the allegations in Sutton's answer, liberally construed, demonstrate neither a waiver of sovereign immunity nor a basis for federal jurisdiction to consider his counterclaim. (ECF No. 12 at 10–12). *See Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (noting the distinction between a "facial" attack and a "factual" one). The Court, therefore, restricts itself to the face of the pleadings, and Sutton, as the non-moving party, receives the same protections as he would if he were defending against a motion brought under Rule 12(b)(6). *See Carlsen*, 833 F.3d at 908.[2] Accordingly, the Court accepts as true all well-pleaded factual allegations underpinning Sutton's counterclaim and views all reasonable inferences therefrom in Sutton's favor; however, the Court will give no effect to conclusory allegations or conclusions of law. *See Stalley v. Cath. Health Initiatives*, 509 F.3d 517, 520-21 (8th Cir. 2007) (citing *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003)).

Courts look to the entirety of a pleading to determine whether jurisdictional requirements are satisfied. *See, e.g., Gardner v. First Am. Title Ins. Co.*, 294 F.3d 991, 993-94 (8th Cir. 2002). Viewed liberally and in its entirety, Sutton's Answer does not demonstrate a waiver of sovereign immunity or the existence of subject-matter jurisdiction over his counterclaim. Sutton alleges that

---

[2] In contrast with a "facial" attack, a court faced with a "factual" attack on subject matter jurisdiction considers matters outside the pleadings, and the non-moving party does not receive the benefit of Rule 12(b)(6) safeguards. *Carlsen*, 833 F.3d at 908.

he suffers from "injuries and symptoms" that he believes are the result of atmospheric exposure to radiofrequency waves regulated by the FCC—specifically, radiofrequency radiation related to "5G cellular" technology—and the symptoms of these injuries, which consist of "insomnia, indigestion, heartburn, hypertension, and intestinal cramps," have been exacerbated by the Government's legal action to enforce the FCC's administrative forfeiture.  (ECF No. 6 at 9-10).  Stating that "[t]he FCC has allowed poisonous 5G cellular radiation to pollute [the] atmosphere[,]" Sutton contends "[t]he FCC is negligent in its duty to protect the public from foul radiation." (*Id*. at 10).  Construed liberally, this claim alleges injury that Sutton believes has resulted from the FCC's policies (its regulatory action or inaction) on matters of environmental or human exposure to radiofrequency radiation related to fifth-generation cellular technology.[3]  He seeks no money damages for his alleged injuries but only "to pursue life, liberty and happiness unimpeded by his public servants." (*Id*.).  In short, he wants the forfeiture action to end.

Sutton's pleading includes no "short and plain statement" of the grounds for the court's exercise of jurisdiction over this counterclaim, and no jurisdictional basis for the counterclaim is readily discernible from Sutton's allegations.  However, given that Sutton asserts the "5G cellular radiation" issue defensively against the forfeiture action (ECF No. 6 at 4, 9), and the only relief he seeks is to end to the forfeiture proceedings (*Id*. at 10), it appears to the Court that Sutton may have assumed that he could bring the challenge pursuant to the Court's existing jurisdiction over the forfeiture action.  Federal Rule of Civil Procedure 8(a)(1) does not require a jurisdictional statement for a claim if the court already has jurisdiction and the pleader's claim needs no new grounds of jurisdiction to support it.  The Court, thus, considers whether Sutton may rely on the

---

[3] For a recent discussion of relevant FCC guidelines and litigation concerning them, see *Environmental Health Trust v. Federal Communications Commission*, 9 F.4th 893 (D.C. Cir. 2021).

existing jurisdiction for the forfeiture action, which arises under 28 U.S.C. §§ 1331, 1345, and 1355.  (ECF No. 3 at 1).

When the Government files a suit, it waives sovereign immunity as to compulsory counterclaims.  *Resolution Trust Corp.*, 745 F. Supp. at 1465-66.  To plead such a claim, a party is not required to include a separate statement of grounds for jurisdiction.  *See* Fed. R. Civ. P. 8(a)(1) (providing that "a short and plain statement of the grounds for the court's jurisdiction" is not required if "the court already has jurisdiction, and the claim needs no new jurisdictional support"); *see also Shelter Mut. Ins. Co. v. Pub. Water Supply Dist. No. 7 of Jefferson County*, 747 F.2d 1195, 1197 (8th Cir. 1984).  A permissive counterclaim, on the other hand, requires a basis of jurisdiction independent of that supporting the main claim in the case.  *Id.*, 747 F.2d at 1197.

A counterclaim is compulsory when it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[.]"  Fed. R. Civ. P. 13(a).  The counterclaim that Sutton asserts is not a compulsory counterclaim.  The alleged exposure to 5G cellular radiation that Sutton claims to be the cause of his maladies appears to concern regulatory policies of the FCC that are wholly unrelated to the FCC's independent administrative forfeiture order that the Government seeks to enforce here.  The counterclaim concerns policies involving standards related to radiofrequency radiation, whereas the main claim is a collection action that arises from Sutton's failure to pay an administrative penalty imposed by the FCC for the unlawful operation of a radio station in 2018.  The Government's main claim and Sutton's counterclaim obviously do not arise from the same "transactions or occurrences."  The counterclaim Sutton asserts, therefore, is permissive, not compulsory.  *See* Fed. R. Civ. P. 13(b) (providing that counterclaims that are not compulsory are permissive).  Consequently, the Government did not waive sovereign immunity by filing this action against Sutton, and Sutton's pleading must provide a sufficient, independent

basis for a waiver of sovereign immunity and corresponding grant of subject-matter jurisdiction for his counterclaim.  *See Shelter*, 747 F.2d at 1197; *Resolution Trust*, 745 F. Supp. at 1465.  It does not do so.

As noted, Sutton's answer contains no plain statement of grounds on which the Court's jurisdiction rests, and his allegations, liberally construed, evince no obvious jurisdictional basis for his counterclaim.  As the Government correctly argues, although the Administrative Procedure Act ("APA") generally waives sovereign immunity for suits challenging the actions of federal agencies and "seeking relief other than money damages," *see* 5 U.S.C. § 702, the APA itself does not supply subject matter jurisdiction.  *Califano v. Sanders*, 430 U.S. 99, 108 (1997); *Preferred Risk Mut. Ins. Co. v. United* States, 86 F.3d 789, 792 n.2 (8th Cir. 1996).  Thus, when suing under the APA, claimants must rely on a separate statutory provision to establish jurisdiction.  Sutton does not identify a statutory provision that supplies jurisdiction to pursue his counterclaim under the APA, nor does he allege "facts that affirmatively and plausibly suggest" a jurisdictional component for his counterclaim.  *Stalley*, 509 F.3d at 521.  The statute that grants federal judicial review of FCC actions vests jurisdiction to review such actions exclusively in the courts of appeals for the United States.  *See* 28 U.S.C. § 2342.  Under the specific statutory scheme applicable to the FCC here, moreover, Congress generally vests the courts of appeals with jurisdiction over appeals from final orders, *see* 47 U.S.C. § 402,[4] and leaves only "a sliver of the jurisdictional pie" to the district courts for enforcement of FCC orders imposing a monetary forfeiture penalty.  *Action*

---

[4] Section 402(a) provides: "Any proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter [except in inapplicable situations] shall be brought as provided by and in the manner prescribed in" the Administrative Orders Review Act, *see* 28 U.S.C. §§ 2341-49, which governs judicial review of rules, regulations, and final orders of several agencies. Section 2342 of that act vests the courts of appeals with jurisdiction to review a final agency order.

*for Children's Television v. FCC*, 827 F. Supp. 4, 10 (D.D.C. 1993), *aff'd*, 59 F.3d 1249 (D.C. Cir. 1995); *see also* 47 U.S.C. § 503(b) (providing for forfeiture procedures); § 503(b)(3)(B) (establishing district court as forum for government collection actions); § 504 (same).  Thus, to the extent Sutton intends, in *defense* of the Government's enforcement action, to challenge unrelated agency action regarding FCC policies related to "5G cellular radiation," such a challenge is foreclosed here.  The Eighth Circuit has held that district courts have no jurisdiction to consider challenges to the validity of regulations underpinning a forfeiture order because that authority is vested exclusively in the courts of appeals.  *Fried*, 207 F.3d at 462-63.  It follows that district courts also have no jurisdiction to consider defensive challenges in a forfeiture proceeding when those challenges concern the validity of regulations or policies that have no relation to the forfeiture order that the Government seeks to enforce.

Further, while the Federal Tort Claims Act ("FTCA") waives sovereign immunity for certain claims of injury resulting from negligent acts or omissions of a federal employee, 28 U.S.C. § 1346(b)(1), in the unique context of the FTCA, all six elements of a meritorious claim are also jurisdictional.  *Brownback v. King*, 592 U.S. 209, 217 (2021).  For a court to maintain subject-matter jurisdiction over a claim under the FTCA, therefore, a plaintiff must plausibly allege all six elements of § 1346(b).  *Id*.  Among the six required elements are those requiring that the claim be (1) for money damages, and that it be for injury caused by (2) the negligent or wrongful act or omission of any employee of the Government acting within the scope of his office or employment. *See id.* at 212 (reciting the elements).  Sutton does not seek money damages, and his allegation that the FCC is "negligent in its duty to protect the public from foul radiation" is a legal conclusion, which the Court cannot and does not accept as fact.  *Buckley*, 9 F.4th at 760 (stating "we do not accept legal conclusions phrased as fact allegations").

The Court lacks subject matter jurisdiction over Sutton's counterclaim.  It is, therefore, RECOMMENDED that the Government's motion to dismiss the counterclaim be GRANTED, and that Sutton's counterclaim be dismissed without prejudice.  *See Charchenko v. City of Stillwater*, 47 F.3d 981, 985 (8th Cir. 1995) ("Under Rule 41(b) of the Federal Rules of Civil Procedure, dismissal for lack of jurisdiction is not an adjudication on the merits and thus such a dismissal should be without prejudice."); *County of Mille Lacs v. Benjamin,* 361 F.3d 460, 464 (8th Cir.2004) (district court is generally barred from dismissing case with prejudice if it concludes subject matter jurisdiction is absent); *Murray v. United States,* 686 F.2d 1320, 1327 & n. 14 (8th Cir.1982) (affirming dismissal without prejudice where dismissal was granted on grounds of sovereign immunity).

One final point regarding Sutton's counterclaim bears mentioning here.  Even if a basis for jurisdiction over Sutton's counterclaim existed, the allegations in Sutton's counterclaim fall short of pleading a claim upon which relief can be granted.  As noted above, Sutton's allegation that the FCC is "negligent in its duty to protect the public from foul radiation," is a legal conclusion, not a statement of fact.  Sutton's counterclaim fails to allege sufficient facts to state a claim upon which relief can be granted, and his counterclaim is also subject to dismissal under Fed. R. Civ. P. 12(b)(6).

## B.    MOTION FOR JUDGMENT ON THE PLEADINGS

The Government next seeks judgment on the pleadings under Federal Rule of Civil Procedure 12(c), asserting that the pleadings and attached exhibits demonstrate that there is no material dispute of fact to be decided and the Government is entitled to judgment as a matter of law.

Section 301 of the Communications Act makes it unlawful to operate a radio station in the United States without authorization from the FCC.  Specifically, 47 U.S.C. § 301 prohibits the use or operation of "any apparatus for the transmission of energy or communications or signals by radio" absent authorization.  The FCC's rules authorize unlicensed transmission of radiofrequency signals in the 88-108 MHz band of the electromagnetic spectrum only if the field strength of the radio signal does not exceed 250 microvolts per meter, at three meters from the transmitting antenna.  47 C.F.R. § 15.239.  Transmitting signals greater than 250 microvolts at the prescribed distance requires a license under § 301.  *Id*.  Any person "who is determined by the [FCC] … to have … willfully … failed to comply with any of the provisions of [the Communications Act] or of any rule, regulation, or order issued by the [FCC] under [the Act] … shall be liable to the United States for a forfeiture penalty."  47 U.S.C. § 503(b)(1)(B).

First, the Government contends that Sutton has not disputed that he engaged in unlicensed radio broadcasting on October 18, 2018, as alleged in the Complaint, and that the defenses he asserts in his Answer are insufficient to create a material dispute of fact to defeat the Government's claim for enforcement of the forfeiture order.  (ECF No. 12 at 14-22).  In his Answer to the Government's Complaint, Sutton does not deny the material allegations that, without authorization from the FCC, he willfully broadcast radio signals at a signal strength that required a license.  (ECF No. 6 at 1-11).  Sutton also acknowledged broadcasting without a license from the FCC when, in pleading his defenses, he explained that he thought he had been operating within his rights and was "unaware of the intricate licensing requirements or could have misunderstood them[,]" but his "lack of intent to violate the law should be considered."  (*Id*. at 6).  It is thus undisputed that Sutton, without authorization from the FCC, operated a radio station that was transmitting signals at a

strength that required a license from the FCC, as alleged in the Government's Complaint.[5]   The material allegations of a violation of § 301, therefore, are deemed admitted as a matter of law.  *See* Fed. R. Civ. P. 8(b)(6) (stating that an answer is deemed to admit a complaint's factual allegation, other than one relating to damages, if the answer fails to deny it).

Although Sutton does not dispute the violation, he asserts that he was unaware of the licensing requirement and had no intent to violate it.  (ECF No. 6 at 6).  The Court construes these facts in Sutton's favor but concludes that they are immaterial to the issue of his liability for the violation of § 301.  Congress has defined the term "willful" to mean "the conscious and deliberate commission or omission [of an] act, irrespective of any intent to violate" the Act or the FCC's rules.  47 U.S.C.  312(f)(1).[6]   In other words, willful intent to broadcast without a license may be established regardless of whether a violator knows his conduct is unlawful or mistakenly thinks it is lawful.  *See United States v. Any & All Radio Station Transmission Equip.*, 976 F.Supp. 1255, 1257 (D. Minn. 1997) (citing *United States v. Gris*, 247 F.2d 860, 864 (2d Cir. 1957)); *United States v. Daniels*, 418 F. Supp. 1074, 1081 (1976) (station licensee's lack of actual knowledge of regulation that station violated was irrelevant to question of whether conduct was a violation).

Related to this point, the Court notes that although Sutton does not allege an affirmative defense under the First Amendment, he explains his lack of intent to violate the law by noting that he (mistakenly) "believed he was operating under the First Amendment, exercising his right to fulfill his religious obligations."  (ECF No. 6 at 6).  Additionally, in his memorandum supporting

---

[5] The Court notes that in response to the Government's motion for judgment on the pleadings, Sutton offers no dispute as to this account of the pleadings.  (ECF No. 13 at 1-2).

[6] Although the definition of "willful" appears in § 312(f)(1), the legislative history to § 312(f)(l) clarifies that the term "willful," as used in both §§ 312 and 503 of the Act, means that "the licensee knew that he was doing the act in question, regardless of whether there was an intent to violate the law."  H.R. Conf. Rep. 97-765, 97th Cong. 2d Sess. 51, 1982 WL 25053 (1982) ("The definitions are intended primarily to clarify the language in sections 312 and 503").

his response to the Government's Rule 12(c) motion, Sutton suggests that the Government "seeks to punish [him]" for broadcasting his religious views.  (ECF No. 17 at 9).  It is well settled, however, that "[t]he right of free speech does not include … the right to use the facilities of radio without a license." *Nat'l Broad. Co. v. United States*, 319 U.S. 190, 227 (1943).  *See also United States v. Any & All Radio Station Transmission Equip.*, 204 F.3d 658, 666 (6th Cir. 2000) (absent a broadcast license, radio broadcasters had no First Amendment interest in its broadcasts).  Thus, even liberally construing Sutton's comments as an attack on the legality of the forfeiture order under First Amendment principles, such a defense fails as a matter of law and, therefore, entails no material factual dispute for purposes of Rule 12(c).

Also immaterial are Sutton's various assertions that: (1) the initial complaint that the FCC received about his broadcast, which triggered the FCC investigation, was invalid because it was made by someone outside the county of Sutton's broadcast; (2) no harmful interference was caused by Sutton's "unlicensed station"; and (3), Sutton did not receive the FCC's Notice of Apparent Liability until he was served with the Government's Complaint seeking enforcement of the penalty. (ECF No. 6 at 2-3).  The statutory requirements for the administrative forfeiture process utilized here do not require a citizen complaint.  *See United States v. Dean*, No. 3:06cv543, 2008 WL 795307, at 3 (N.D. Fla. Mar. 24, 2008) ("The plain language of [47 U.S.C. § 503(b)] does not require receipt of a complaint prior to initiation of any forfeiture action.").  Nor does the statute require a showing of harm independent of the willful violation.  *See* 47 U.S.C. § 503(b)(1)(B),4(A)-(C); *United States v. Rhodes*, No. 21-110-M-DLC, 2024 WL 1174510, at 2 (D. Mont. Mar. 19, 2024) (stating actual harm is not a prerequisite to imposing forfeiture).  Finally, it is undisputed that the FCC sent the Notice of Apparent Liability to Sutton's last known address by Certified Mail, which is sufficient notice under the statute.  *See* 47 U.S.C. § 503(b)(4)(B) (providing that

notice is sufficient if it is received by the violator or sent to his last known address by registered or certified mail).

Sutton next interposes four affirmative defenses: accord and satisfaction; contributory or comparative negligence; illegality; and laches. (ECF No. 6 at 4-5). As an initial matter, the Court addresses the Government's suggestion that the applicable pleading standard for judging the sufficiency of Sutton's affirmative defenses is that set forth in *Iqbal* and *Twombly*. (ECF No. 12 at 14, 17-20). Citing *National Union Fire Insurance, Company v. Cargill*, 61 F.4th 615 (8th Cir. 2023) (*Cargill*), the Government notes that more than a generic reservation of the right to assert affirmative defenses is needed to save a suit from judgment on the pleadings. (*Id*. at 17). It likens Sutton's assertions of affirmative defenses, which it characterizes as "bare-bone[d]" and "threadbare," to the complete failure to assert any affirmative defenses that was at issue in *Cargill*. (*Id*. at 14, 18-19). In *Cargill*, National Union filed suit, and Cargill filed a counterclaim. In its answer to the counterclaim, National Union identified no affirmative defenses and simply reserved the "right to assert any and all" affirmative defenses. *Cargill*, 61 F.4th at 618 (internal quotation marks omitted). Following the district court's grant of judgment on the pleadings in favor of Cargill, National Union appealed and argued that factual issues remained simply because it had reserved the right to assert affirmative defenses. *Id.* at 618-19. In rejecting this argument, the Eighth Circuit Court of Appeals held that National Union's "generic reservation of the right to assert affirmative defenses [did] not save its suit from judgment on the pleadings." *Id*. at 620. In support of this holding, the Eighth Circuit cited a Rule 12(b)(6) case, *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018), for the proposition that "[t]hreadbare recitals ... supported by mere conclusory statements are not sufficient to survive a motion to dismiss." *Id*.

The Eighth Circuit's citation to *Mick* in *Cargill* has led at least one district court to suggest that, in the context of a Rule 12(c) challenge, the pleading standard for affirmative defenses is governed by the pleading standard set forth in *Iqbal* and *Twombly*. *See, e.g., Auto-Owners Mut. Ins. Co. v. Coffin*, No. 4:22-CV-00129, 2023 WL 3479170, at 6 (S.D. Iowa May 1, 2023) (stating *Cargill* suggests that the pleading standard described in *Twombly* and *Iqbal* applies to affirmative defenses "at least when a motion for judgment on the pleadings has been filed[]"); *Estate of Bisignano v. Exile Brewing Co., LLC*, ___ F. Supp. 3d ___, 2023 WL 7167889, at 10 (S.D. Iowa Sept. 26, 2023) (citing *Coffin*). In the undersigned's view, *Cargill* did not alter the pleading standard for affirmative defenses but simply applied the well-established standard for Rule 12(c) motions, which is that courts considering such motions look to the well-pleaded facts that are alleged or may be reasonably inferred from the parties' pleadings, giving a non-moving defendant the benefit of its well-pleaded facts, and drawing all reasonable inferences in his favor. *See Fried*, 207 F.3d at 462; 5 Wright & Miller, § 1368, at 245. A non-moving defendant is not entitled to that benefit when it alleges no affirmative defenses, and when none are reasonably inferable from the parties' pleadings. Because National Union altogether failed to allege affirmative defenses and none could be reasonably inferred from the well-pleaded facts in the parties' pleadings, National Union could demonstrate no material dispute of fact as to any affirmative defenses. To reach this result in *Cargill*, the Eighth Circuit did not have to alter the pleading standard for affirmative defenses, and it did not purport to do so.[7]

---

[7] Unlike Rule 8(a)(2)'s requirement that a complaint must contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief," Rule 8(c) only requires that, "[i]n responding to a pleading, a party must affirmatively *state* any avoidance or affirmative defense." District courts in this circuit overwhelmingly adhere to the view that the *Iqbal* and *Twombly* plausibility standard, which is necessary to adequately state a claim under Rule 8(a)(2), has not been made applicable to pleading defenses under Rule 8(c). *See CCD Holdings, LLC v. Cenergy USA, Inc.*, No. 4:19CV102, 2020 WL 128111990, at 4 (E.D. Ark. Jan. 7, 2020); *Sorrell Holdings*

Turning to Sutton's affirmative defenses, the Court applies the foregoing principles and concludes that the affirmative defenses present no genuine disputes of material fact. Sutton first asserts "accord and satisfaction," stating only that he "has accepted the terms of FCC's offer to forego enforcement in exchange for complia[nce.] Mr. Sutton is in compliance." (ECF No. 6 at 4). Liberally construing this allegation, Sutton asserts that his alleged compliance with the FCC's initial notice commanding that he immediately cease broadcasting—the only communication that Sutton indicates he received from the FCC until the Complaint was filed—demonstrates "accord and satisfaction" that forecloses imposition of a penalty for the undisputed violation. The parties do not dispute that, as exhibits to the pleadings, both the FCC's initial Notice of Unlicensed Operation and Sutton's response to are part of the pleadings and may be considered. *See Brown*, 628 F.3d at 459-60 (documents attached to a complaint are considered part of the pleadings and may be used to determine a challenge to the sufficiency of the pleadings). The notice clearly contains no "offer to forego enforcement," but rather it details Sutton's violation of § 301, commands him to stop operating, warns that his violation could subject him to a substantial monetary penalty, and directs him to respond with evidence of his authority to operate. (ECF No. 3-1 at 1-2). Sutton's response to the notice also plainly demonstrates no offer and no compliance with one. To the contrary, Sutton asserts that the law cited by the FCC cited in its notice—47 U.S.C. § 301—does not apply to him and he was "disinclined to acquiesce to [the FCC's] demands." (ECF No. 3-2 at 1-2). Thus, regardless of whether Sutton ceased broadcasting at some

---

*LLC v. Infinity Headware & Apparel, LLC*, No. 4:16-cv-4019, at 3 (W.D. Ark. Mar. 16, 2017); *Summers Mfg. Co., Inc. v. Tri-Cty. AG, LLC*, 300 F. Supp. 3d 1025, 1044 (S.D. Iowa 2017); *J & J Sports Prods., Inc. v. Vega*, No. 5:15-CV-5199, 2016 WL 627356, at 1–2 (W.D. Ark. Feb. 16, 2016); *Denton v. Conveyor Tech.*, No. 4:12-CV-00191 KGB, 2013 WL 12139147, at 1 (E.D. Ark. Jan. 31, 2013); *Ash Grove Cement Co. v. MMR Constructors, Inc.*, No. 4:10–CV–04069, 2011 WL 3811445 (W.D. Ark. Aug. 29, 2011).

point, his assertion of "accord and satisfaction" is belied by the face of the pleadings and fails as a matter of law.  When considering a Rule 12(c) motion, the Court will not assume the truth of legal conclusions merely because they are cast in the form of factual allegations, nor will it consider, as fact, an assertion "which might appear by a record or document included in the pleadings to be unfounded."  *Hargis Canneries*, 60 F. Supp. at 729; 5 Wright & Miller, § 1368, at 245.  This defense does not present a genuine dispute of material fact.

Sutton next asserts the affirmative defense of "contributory or comparative negligence of the plaintiff."  (ECF No. 6 at 4).  He states that: "[t]he FCC takes no action whatsoever to protect Americans from the harms of 5G cellular radiation.  The FCC serves no discernible purpose beyond censorship."  (*Id*.).  For reasons previously stated, *supra*, Sutton may not litigate, as a defense to this enforcement action, the FCC's policies concerning radiofrequency radiation related to fifth-generation cellular technology.  The legal concepts of contributory or comparative negligence, which generally restrict a plaintiff's recovery of damages from a negligent defendant if the plaintiff also was negligent, have no applicability to this action by the United States to collect a sum due for a violation of its laws.  This affirmative defense is legally insufficient on the face of the pleadings and thus does not present a material dispute of fact.

Sutton next alleges a defense of "illegality," asserting that "[o]nce [the] FCC achieved its stated goal of compliance, the proper course is disengagement," and that "[t]o impose penalty where no transgression exists is blatant violation of U.S.C. Title 18, Section 242 and section 241."  (ECF No. 6 at 4).  Liberally construed, these allegations simply reassert the defense of accord and satisfaction, which the Court has already concluded presents no genuine dispute of material fact because it is belied by the pleadings.  That Sutton adds a legal conclusion to the mix—that imposition of a forfeiture penalty when there is accord and satisfaction violates criminal civil rights

statutes—does not create a material dispute that withstands the Government's Rule 12(c) motion. *See Buckley*, 9 F.4th at 760 (stating well-pleaded facts and related inferences are assumed to be true, "but we do not accept legal conclusions phrased as fact allegations").

Finally, Sutton asserts "laches" as an affirmative defense, stating "The⸱⸱FCC⸱⸱has⸱⸱waited⸱⸱five⸱⸱years⸱⸱to⸱⸱bring⸱⸱this⸱⸱action????"  (ECF No. 6 at 5).  The doctrine of laches is an equitable defense to be applied when one party is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the other party.  *Bostwick Irrigation Dist. v. United States*, 900 F.2d 1285, 1291 (8th Cir. 1990) (citing *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 804 (8th Cir. 1979), *cert. denied*, 446 U.S. 913 (1980)).  Assuming the truth of Sutton's allegation, it is immaterial to the issue of his liability for a violation of 47 U.S.C. § 301. The Eighth Circuit has recognized the longstanding rule that laches does not apply in actions brought by the United States.  *Bostwick*, 900 F.2d at 1291.  In *United States v. Brown*, 835 F.2d 176, 180 (8th Cir. 1987), the Eighth Circuit applied this rule to reject an argument that laches barred the government's action to collect a bail-forfeiture judgment, finding that the defense of "laches cannot be asserted against the sovereign" (citing *Guaranty Trust Co. v. United States*, 304 U.S. 126, 132 (1938)).  This affirmative defense fails as a matter of law and, thus, presents no material dispute of fact.

The foregoing discussion demonstrates that on the face of the pleadings there remain no material issues of fact about Sutton's liability.  It is undisputed that, as alleged in the Complaint and the NAL incorporated in the Forfeiture Order, Sutton willfully engaged in unauthorized operation of a radio station in 2018 and was transmitting signals at a strength that required authorization from the FCC.  He is, therefore, "liable to the United States for a forfeiture penalty."

47 U.S.C. § 503(b)(1)(B); 47 C.F.R. § 1.80(a)(2).  The only remaining issue is whether the amount of the forfeiture imposed by the FCC is appropriate.

Pursuant to 47 U.S.C. § 503, the FCC is authorized to impose forfeiture penalties for a wide array of Communications Act violations, including the failure to comply with the licensing provisions of § 301.  To determine the amount of the penalty to be assessed for a violation like Sutton's—involving the operation of a radio station without authorization—the FCC begins with a fixed "base" forfeiture amount of $10,000 per violation, and it may adjust the amount upward or downward, considering factors relative to the violation and the violator.  47 U.S.C. § 503(b)(2)(E); 47 C.F.R. § 1.80(b)(11); 47 C.F.R. 17087, 17101.  The authorized forfeiture amount for operating without authorization is capped at $20,134 per violation (as of the date the NAL was issued).[8]  *See* 47 U.S.C. § 503(b)(2)(D); 47 C.F.R. § 1.80(b); Annual Adjustment of Civil Monetary Penalties to Reflect Inflation, 84 Fed. Reg. 2461 (Feb. 7, 2019).

Pursuant to its guidelines, the FCC proposed the base forfeiture of $10,000 for Sutton's violation.  Noting that it possessed discretion to depart from its guidelines amount based on the particular facts of each case, the FCC determined that no upward adjustment was warranted.  (ECF No. 3-3 at 3-4; ECF No. 3-4 at 1 n.3).  It further considered whether there was any basis for a downward adjustment of the proposed forfeiture based on the applicable statutory criteria, and it found none.  (*Id*.).  In his Answer, Sutton asserts that the amount of the forfeiture is

---

[8] The amount assessed for a *continuing* violation could not exceed a total of $151,005 for any single act or failure to act in violation of § 301 (as of the date of the NAL).  The Government has alleged that Sutton violated § 301 by his willful operation of a radio station on a single day, October 18, 2018, without a license.  (ECF No. 3 at 4-5).  There is no indication in the pleadings that this case involves a continuing violation.  *See* 47 U.S.C. § 503(b) (providing liability for willful or repeated noncompliance with the Act and relevant rules, regulations, or orders); 47 U.S.C. § 312(f)(2) (defining "repeated" acts or omissions to mean those committed more than once or, for continuing acts or omissions, more than one day).

"disproportionate" because "this is a first-time offense and there's an evident lack of tangible harm." (ECF No. 6 at 6). He also asserts that "the proposed penalty [will] inflict significant financial hardship on [him] and does not align with his ability to pay." (*Id*.). The Court assumes the truth of these statements but concludes that they do not create a material issue of fact about the reasonableness of the amount of the forfeiture.

FCC Guidelines establish criteria that are used to determine whether a base penalty should be adjusted upward or downward. 47 C.F.R. § 1.80(b)(11). Substantial harm is a criterion for an upward adjustment of the penalty; however, a lack of harm is not a guidelines criterion for a downward adjustment. *See id*. Further, the FCC noted that it considered the statutory criteria, which include the nature and gravity of Sutton's violation and any history of prior offenses. While Sutton did not assert inability to pay as a factor for the FCC to consider when assessing the amount of the penalty, the inability to pay is but one factor of many to be considered when determining an appropriate forfeiture amount. There is no dispute that Sutton violated the Act, and his lengthy diatribe in response to the FCC following the receipt of the initial notice indicates that he was undeterred by the notice, had no regard for the laws it sought to enforce, and was "disinclined to acquiesce" to the FCC's demands that he cease operation or provide evidence of his authorization to operate. Congress authorized penalties "sufficiently high to deter violations and constitute a meaningful sanction when violations occur." 12 FCC Rcd. 17087, 17097. In Sutton's case the FCC imposed a penalty well below the maximum potential penalty of $20,134. The Court concludes that his asserted inability to pay, lack of any prior violations, and asserted lack of harm do not create a material issue of fact pertaining to the reasonableness of the $10,000 penalty.

The Court is mindful that the mechanism of review pursuant to 47 U.S.C. § 504(a) is a trial *de novo*. When considering whether an unpaid forfeiture penalty imposed by the FCC should be

enforced in a proceeding under § 504(a), however, courts have explained that "[r]eview of a forfeiture amount is limited to whether it reflects a reasonable application of [47 U.S.C. § 503] and the 'adjustment criteria' set out in [47 C.F.R. § 1.80]." *United States v. Hodson Broad.*, 666 F. App'x 624, 627-28 (9th Cir. 2016) (affirming grant of summary relief, noting penalty was reasonable even though FCC noted existence "some evidence" of inability to pay); *United States v. Rhodes*, No. 21-110-M-DLC, 2024 WL 1174510 (D. Mont. Mar. 19, 2024). In *Rhodes*, the district court granted summary judgment, enforcing a total forfeiture penalty of $9,918,000 assessed by the FCC for 4,959 violations of 47 U.S.C. § 227(e). In the Government's action to enforce the forfeiture order, Rhodes newly claimed the inability to pay the penalty and that no actual harm had been caused by his violations. *Id.* at 2. Relying on *Hodson*, the district court considered the reasonableness of the FCC's forfeiture and noted that although actual harm may be relevant in the FCC's determination of a forfeiture penalty, it is not a prerequisite to forfeiture. *Id.* It further noted that the ability to pay is only one factor to be considered when determining an appropriate forfeiture amount, and in Rhodes's case, the FCC had imposed a penalty well below the maximum potential penalty of $11,766 per violation. *Id.* Similarly, other courts have held that an FCC forfeiture penalty should be upheld where the amount is reasonable and consistent with the relevant FCC guidelines. *United States v. Frank*, 487 F. App'x 931, 933 (5th Cir. 2012) (affirming district court's conclusion that "the amount of the [FCC's] forfeiture order was not unreasonably high"); *United States v. Neely*, 595 F.Supp.2d 662, 667 (D. S.C. 2009) (upholding FCC's forfeiture penalty because it was "within the agency's guidelines and reasonable on its face" and granting summary judgment to government).

There is no material dispute that precludes judgment on the pleadings on the issues of Sutton's liability and the amount of the forfeiture penalty to be imposed for the unlicensed operation of a radio station identified in the Forfeiture Order.

## IV.     CONCLUSION

For the reasons and upon the authorities discussed above, it is RECOMMENDED that Plaintiff's Motion to Dismiss Defendant's Counterclaims and Motion for Judgment on the Pleadings (ECF Nos. 11, 12) be **GRANTED**, and that Judgment be entered in favor of the United States as to all claims.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 27th day of March 2024.

/s/ *Mark E. Ford*

HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE